UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN TAORMINA,

                                      **Plaintiff,**

                  v.                                              1:04-CV-1508
                                                                            (FJS/RFT)

INTERNATIONAL BUSINESS MACHINES CORP.,

                                      **Defendant.**
_____

**APPEARANCES**                                        **OF COUNSEL**

**OFFICE OF STEFAN D. BERG**             STEFAN D. BERG, ESQ.
309 Arnold Avenue
Syracuse, New York 13210
Attorneys for Plaintiff

**PAUL, HASTINGS, JANOFSKY**            ALLAN S. BLOOM, ESQ.
**& WALKER LLP**
75 East 55th Street
New York, New York 10022
Attorneys for Defendant

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       Plaintiff filed his complaint against Defendant on December 30, 2004. In that complaint, he asserted that, in October 2003, he received a memo advising him of a reduction of force in Defendant's Global Services Group, in which he worked, and that he would be selected for termination unless he could find another position with Defendant. *See* Complaint at ¶¶ 18, 21-22. He also stated that, at the time that Defendant decided to terminate him, his supervisor knew that he would be eligible for retirement in one year and that Defendant selected him for

termination to avoid his increased pension benefits from vesting. *See id.* at ¶¶ 23-24. Moreover, he claimed that, during the thirty days after he received notice of his termination, he found three different positions with Defendant for which he was qualified and with managers interested in hiring him but that Defendant would not permit him to take any of these positions for reasons unrelated to his ability to perform the work. *See id.* at ¶ 25. Based upon these allegations, Plaintiff asserted that Defendant used his age as a determining factor in selecting him for termination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 620, and New York Executive Law § 296 ("New York Human Rights Law"), and that Defendant terminated him in order to avoid his increased pension benefits from vesting in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001. *See id.* at ¶¶ 32, 34, 36. Finally, Plaintiff sought relief in the form of reinstatement or, in lieu thereof, restoration of his pension to where it would have been had he retired at age 55, and an award of costs and attorney's fees.

Currently before the Court is Defendant's motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Plaintiff released all claims against it when he signed the General Release and Covenant Not to Sue ("Release") in February 2004.[1]

---

[1] On the same day that it filed its motion to dismiss, Defendant filed two counterclaims against Plaintiff. In the first of these counterclaims, Defendant asserted that, because Plaintiff had breached the terms of the Release by bringing claims against it under ERISA and New York Human Rights Law that were related to the termination of his employment, he was liable to Defendant for its costs and expenses, including attorney's fees. In the second counterclaim, Defendant sought a declaratory judgment that Plaintiff would remain liable to it for such costs and expenses in any subsequent or other proceedings related to this action. *See* Dkt. No. 11.

## II. DISCUSSION

A.   **Rule 12(b) standard**

A court may grant a Rule 12(b)(6) motion to dismiss for failure to state a claim "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Phillip v. Univ. of Rochester*, 316 F.3d 291, 293 (2d Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)); *Carruthers v. Flaum*, 365 F. Supp. 2d 448, 453-54 (S.D.N.Y. 2005) (citations omitted). The court's job is not to weigh the evidence to be presented at trial but, instead, to determine if the claims are legally sufficient. *See King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999); *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted). In making its determination, the court must construe all reasonable inferences in favor of the plaintiff and accept the allegations contained in the complaint as true. *See King*, 189 F.3d at 287 (citation omitted). "Therefore, the court must evaluate whether the allegations in the complaint can sustain a cause of action under the applicable law . . . ." *Telesca v. Long Island Hous. P'ship, Inc.*, No. 05-cv-05509, 2006 WL 2334980, *5 (Aug. 12, 2006) (citations omitted). Finally, "[f]or purposes of a motion to dismiss, [the Second Circuit] ha[s] deemed a complaint to include any . . . documents that the plaintiff[] either possessed or knew about and upon which [he] relied in bringing the suit . . . ." *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000) (internal citations omitted).

Defendant argues that Plaintiff waived his right to pursue his claims against it when he signed the Release in exchange for substantial consideration. Under Rule 8(c) of the Federal Rules of Civil Procedure, waiver constitutes an affirmative defense. *See* Fed. R. Civ. P. 8(c). Although the Second Circuit adheres to the rule that a defendant can present an affirmative

defense as a basis for a motion to dismiss, *cf. Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86-87 (2d Cir. 2000) (holding that "[d]ismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises . . . statutory waiver and bar as affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law" (citations omitted)); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (holding that "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint"), the facts needed to establish an affirmative defense are usually shown by matters outside the complaint itself, meaning that the defense technically cannot be adjudicated on a motion under Rule 12, *see* Wright & Miller, *Federal Practice & Procedures:* Civil 3d § 1277.

In the present case, Defendant's affirmative defense is based upon the Release, a document which Plaintiff signed and possesses and which is at the core of the parties' dispute. Although Plaintiff does not mention the Release in his complaint and, therefore, technically does not "rely on" the Release as a basis for his suit against Defendant, in his opposition to Defendant's motion to dismiss, he argues that the Release does not prohibit him from bringing a claim against Defendant for its violation of the ADEA. Under these circumstances, the Court finds that the complaint includes the Release and that, therefore, the Court may consider the Release in resolving Defendant's motion to dismiss.

**B.     The Older Workers Benefits Protection Act ("OWBPA")**

In support of its motion, Defendant asserts that Plaintiff's ADEA claim is barred because

the Release that Plaintiff signed is clear and unambiguous and because Plaintiff's execution of the Release was knowing and voluntary in light of the fact that he was an educated manager who had forty-five days to review the Release and to consult with his attorney. Plaintiff disagrees, arguing that the Release contained unclear and misleading language and, therefore, did not comply with the requirements of the OWBPA.

The statutory requirements for waiver of ADEA claims are "strict" and "unqualified." *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998); *Thomforde v. Int'l Bus. Machs. Corp.*, 406 F.3d 500, 503 (8th Cir. 2005) (citation omitted). As the party asserting the validity of Plaintiff's waiver, Defendant "has the burden of proving the waiver was knowing and voluntary." *Hartger v. Int'l Bus. Machs. Corp.*, No. 3:04-CV-2124-L, 2005 WL 2095774, *2 (N.D. Tex. Aug. 31, 2005) (citing 29 U.S.C. § 626(f)(3)).

Under the OWBPA, which amended the ADEA in 1990, a waiver cannot be considered "knowing and voluntary" unless, at a minimum,

> (A) the waiver is part of an agreement between the individual and the employer that *is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;*
> (B) the waiver specifically refers to rights or claims arising under [the ADEA];
> (C) the individual does not waive rights or claims that may arise after the date the waiver is executed;
> (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
> (E) the individual is advised in writing to consult with an attorney prior to executing the agreement;
> (F)(i) the individual is given a period of at least 21 days within which to consider the agreement; or
> (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class

>of employees, the individual is given a period of at least 45 days
>within which to consider the agreement; [and]
>(G) the agreement provides that for a period of at least 7 days
>following the execution of such agreement, the individual may
>revoke the agreement, and the agreement shall not become
>effective or enforceable until the revocation period has expired . . .
>.

Older Workers Benefits Protection Act, § 201, 104 Stat. 983, 29 U.S.C. § 626(f)(1)(A)-(G) (emphasis added).

If an agreement fails to meet any of these statutory requirements, the waiver is ineffective as a matter of law. *See Oubre*, 522 U.S. at 427; 29 U.S.C. § 626(f).

In this case, Plaintiff asserts that his waiver of his ADEA claim was not knowing and voluntary because the Release he signed did not comply with the first requirement of the OWBPA for such a waiver, i.e., that the Release be "written in a manner calculated to be understood by such individual, or by the average individual eligible to participate." 29 U.S.C. § 626(f)(1)(A).

The parties rely on three cases to support their respective positions. In all of these cases International Business Machines Corporation ("IBM") was the defendant, and two of them involved the exact same Release as the one at issue in this case. *See Thomforde v. Int'l Bus. Machs. Corp.*, 406 F.3d 500 (8th Cir. 2005) (same release); *Syverson v. Int'l Bus. Machs. Corp.*, No. C-03-04529, slip op. (N.D. Cal. May 4, 2004) (same release);[2] *Reid v. IBM Corp.*, No. 95 Civ. 1755, 1997 WL 357969 (S.D.N.Y. June 26, 1997) (predecessor version of release).[3]

---

[2] IBM filed an appeal from the district court's decision in *Syverson*. Although the Court searched both the Ninth Circuit's website and Westlaw in an attempt to ascertain the status of this appeal, there was no information available.

[3] Plaintiff relies upon the Eighth Circuit's reasoning in *Thomforde* to support his position;
(continued...)

In *Reid*, the release at issue was the release that IBM used prior to the one at issue in this case. Although in many respects the two releases are similar, the *Reid* Release did not contain the identical "covenant not to sue" language that the Release in this case includes. Therefore, the court did not have to consider whether the "release of claims, including ADEA claims," language on page one of that release conflicted with the language on the next page of that release. Specifically, the second clause of the *Reid* Release provides, in pertinent part, that

> [y]ou agree that you will never institute a claim of any kind against IBM, . . . including, but not limited to, claims related to your employment with IBM or the termination of that employment or other severance payments or your eligibility or participation in the Retirement Bridge Leave of Absence independently from ISTP. **If you violate this release by suing IBM . . ., you agree that you will pay all costs and expenses of defending against the suit incurred by IBM, . . ., including reasonable attorneys' fees.**

*See* Affirmation of Allan S. Bloom, dated June 30, 2005 ("Bloom Aff."), at Exhibit "C" ("*Reid* Release") at 3 (emphasis added).

In comparison, the Release that Plaintiff signed contains additional language in this same clause, upon which Plaintiff relies to support his position that the Release is not written in a manner calculated to be understood by an individual such as him. Specifically, this clause in the Release that Plaintiff signed provides that

> [y]ou agree that you will never institute a claim of any kind against IBM, . . . including, but not limited to, claims related to your employment with IBM or the termination of that employment or other severance payments or your eligibility for participation in the retirement bridge. **If you violate this *covenant not to sue* by suing IBM . . ., you agree that you will pay all costs and expenses of defending against the suit incurred by IBM . . ., including reasonable attorneys' fees,** *and all further costs and*

---

³(...continued)
Defendant relies upon the courts' reasoning in *Syverson* and *Reid* to support its position.

> ***fees, including attorneys' fees, incurred in connection with collection. This covenant not to sue does not apply to actions based solely under the Age Discrimination in Employment Act of 1967, as amended. That means that if you were to sue IBM . . . only under the Age Discrimination in Employment Act of 1967, as amended, you would not be liable under the terms of this Release for their attorneys' fees and other costs and expenses of defending against the suit. This Release does not preclude filing a charge with the U.S. Equal Employment Opportunity Commission.***

*See id.* at Exhibit "A" ("Release") at 2 (emphasis added).

Defendant argues that it revised the *Reid* Release to include this additional language to comply with the regulations that the EEOC issued in December 2000, which purported to codify the Supreme Court's decision in *Oubre*. This regulation provides, in pertinent part, that

> [n]o ADEA waiver agreement, covenant not to sue, or other equivalent arrangement may impose any condition precedent, any penalty, or any other limitation adversely affecting any individual's right to challenge the agreement. This prohibition includes . . . provisions allowing employers to recover attorneys' fees and/or damages because of the filing of an ADEA suit.

29 C.F.R. § 1625.23(b).

Although the *Reid* Release is similar to the Release at issue in this case, the *Reid* court's legal reasoning is not dispositive, or even helpful, to the Court's resolution of the issue in this case – whether the Release is written in an understandable manner. In fact, in *Reid*, the plaintiff did not dispute that the Release he signed satisfied this requirement of the OWBPA. *See Reid*, 1997 WL 357969, at *4.[4] Moreover, and perhaps more importantly, the language upon which

---

[4] The plaintiff in *Reid* argued that the Release he signed did not meet two of the OWBPA's requirements: (1) he was not given additional consideration for signing the Release and (2) he was not given seven days to revoke the Release after he signed it. *See Reid*, 1997 WL 357969, at *4-*5. Neither of these requirements is at issue in this case.

Plaintiff relies to support his position that the Release he signed does not comply with the OWBPA's requirements was not included in the *Reid* Release. For all these reasons, the Court concludes that, because the language of the clause at issue in the *Reid* Release is substantively different than the language at issue in this case, the court's reasoning in that case is not dispositive of the Court's resolution of this motion.

Defendant also relies upon *Syverson* to support its position that the Release is valid and enforceable. In that case, the plaintiffs, like Plaintiff in this case, challenged only the first requirement of the OWBPA – that the waiver was written in a manner calculated to be understood by the average individual eligible to participate. *See Syverson*, slip op. at 4 (citations omitted). Moreover, like Plaintiff in this case, the *Syverson* plaintiffs asserted that "by renaming both the General Release and Covenant Not to Sue as a 'Release,' the waiver conflates the separate sections in the document addressing each provision." *Id.* at 5. The plaintiffs argued that "the language of the covenant not to sue, combined with the language of the release, makes the waiver contradictory and confusing." *Id.* at 6. On the other hand, IBM asserted, as it does in this case, "that this provision was necessary to comply with the EEOC's mandate that an employee suing under the ADEA may not be held liable for damages in breach of a covenant not to sue." *Id.* (citation omitted).

The *Syverson* court, relying on the district court's decision in *Thomforde v. IBM*, 304 F. Supp. 2d 1143, 1144 (D. Minn. 2004), which the Eighth Circuit subsequently overturned, rejected the plaintiffs' argument, noting that it was "satisfied that this language is written in a manner calculated to be understood by an average individual selected by IBM for employment termination." *Id.* at 6 (citation omitted). In reaching this conclusion, the court reasoned that

> the waiver provides for recovery of fees and costs incurred by IBM in the event a previously waived claim is brought, but does not provide for fees and costs incurred by IBM if a claim is brought under the ADEA. In other words, although IBM may not recover fees and costs if a claim is brought under the ADEA, IBM may still defend against any ADEA claim by asserting that it was previously waived. To the extent the language of the waiver requires clarification, the waiver explicitly advises affected employees to consult an attorney, their manager, the MERA Project Office or Human Resources prior to signing.

*Id.*

In contrast to the district court in *Syverson*, the Eighth Circuit, in *Thomforde*, concluded that the exact same release "did not satisfy the statutory waiver requirements of the Older Workers Benefits Protection Act (OWBPA), 29 U.S.C. § 626(f) (2000) . . . ." *Thomforde*, 406 F.3d at 501.

In *Thomforde*, the plaintiff, prior to signing the Agreement, asked his supervisor "if the exception for ADEA claims contained in the covenant not to sue meant that he could sue IBM if the case was limited to claims under the ADEA." *Id.* at 502. After contacting IBM's legal counsel, the plaintiff's supervisor sent him an e-mail stating that "'[t]he site attorney was not comfortable providing an interpretation for you and suggested you consult with your own attorney.'" *Id.* (quotation omitted). After meeting with his attorney, the plaintiff decided that he could sign the Agreement and still pursue his ADEA claims as long as he limited his suit to such claims. *See id.* Moreover, on the day that he signed the Agreement, the plaintiff wrote a letter to IBM's counsel stating that "he would 'be filing a complaint with the EEOC, following up with other possible legal action, as allowed under the General Release and Covenant Agreement.'" *Id.* (quotation omitted).

The court reviewed the Agreement, focusing on the language of the waiver clause and the language of the covenant not to sue clause,[5] and concluded that

> one plausible reading of the document reveals that the employee releases IBM from all ADEA claims and agrees not to institute a claim of any kind against IBM, except the employee may bring an action based solely under the ADEA. Without a clear understanding of the legal differences between a release and a covenant not to sue, these provisions would seem to be contradictory; how can an employee bring a suit solely under the ADEA if the employee has waived all claims under the ADEA?

*Id.* at 503.

The court also rejected IBM's argument "that the release and the covenant not to sue were totally separate and distinct provisions of the Agreement." *Id.* Although the court recognized that "[a] release of claims and a covenant not to sue serve different purposes . . . [it noted that] the differences between a release and a covenant not to sue are fairly amorphous and may not be readily apparent to a lay reader." *Id.* at 503-04 (internal citation omitted). The court reasoned further that

> [t]he intended effect of the Agreement was to release the employee's substantive claims under the ADEA, while preserving the employee's right to challenge *the validity* of the release through

---

[5] Specifically, the court cited the following language:

> The waiver language in the Agreement clearly states that [the plaintiff], . . . released IBM from all claims of any kind, including claims under the ADEA. Three paragraphs later, the Agreement then states that "[y]ou agree that you will never institute a claim of any kind against IBM . . . including, but not limited to, claims related to your employment with IBM." . . . The paragraph continues by stating that "[t]his covenant not to sue does not apply to actions based solely under the [ADEA]." . . .

*Thomforde*, 406 F.3d at 503 (internal quotations omitted).

-11-

>a lawsuit, as provided by the regulations. *See* 29 C.F.R. § 1625.23(b) (precluding any waiver provisions that penalize a party for challenging the validity of a waiver). Yet, the Agreement does not explain how the provisions relate to each other or the limited nature of the exception to the covenant not to sue in light of the release of claims.

*Id.* at 504.

Thus, the court found that, "[o]nce IBM chose to use the legal terms of art in the Agreement, IBM had a duty to carefully explain the provisions. *See* 29 C.F.R. § 1625.22(b)(3) ("Waiver agreements must be drafted in plain language . . . [and] usually will require the limitation or elimination of technical jargon . . . .")." *Id.*

The court also found fault with the fact that

>[n]ot only does the Agreement fail to explain the relationship between the release and the covenant not to sue, it also uses the terms in such a way as to suggest that they are interchangeable. The opening line of the Agreement refers to the General Release and Covenant Not to Sue as "the Release," indicating that the terms are interchangeable. There are no headings indicating a change of topic between the paragraphs. Immediately following the sentence that states that "[t]his covenant not to sue does not apply to actions based solely under the [ADEA]," the Agreement uses the term Release to explain the covenant not to sue: "[t]hat means that if you were to sue IBM . . . only under the [ADEA], you would not be liable under the terms *of this Release* for their attorneys' fees." . . . The paragraph addressing the covenant not to sue continues with a statement that "this Release" does not prohibit an employee from filing a charge with the EEOC, again intimating that the terms are interchangeable.

*Id.*

Based upon this language, the court concluded that it could

>easily see how a participant under this Agreement could construe the statement that "[t]his covenant not to sue does not apply to actions based solely under the [ADEA]" as an exception to the

> general release, not just an exception to the covenant not to sue.
> Given the lack of clarity in the Agreement, and IBM's declination
> to tell [the plaintiff] what it meant by the language, we hold that
> the Agreement is not written in a manner calculated to be
> understood by the intended participants as required by the
> OWBPA. . . . As such, the Agreement is ineffective as a matter of
> law to waive [the plaintiff's] rights under the ADEA. . . .

*Id.* at 504-05 (internal footnotes and citations omitted).

After reviewing all three of the above-referenced cases, the Court finds that the Eighth Circuit's reasoning in *Thomforde* is persuasive and, therefore adopts the same, concluding that, as a matter of law, the Release is ineffective to waive Plaintiff's rights under the ADEA because it is not "written in a manner calculated to be understood by . . . the average individual eligible to participate," 29 U.S.C. § 626(f)(1)(A), as the OWBPA requires.[6]  Therefore, the Court denies

---

[6] The Court notes that, to the extent that Defendant might attempt to argue that the court's decision in *Thomforde* was based upon the fact that the plaintiff in that case questioned IBM's officials about the meaning of the Agreement or in some other manner put IBM on notice that he did not understand that he was waiving his rights under the ADEA, the Eighth Circuit foreclosed such an argument in its recent decision in *Parsons v. Pioneer Seed Hi-Bred Int'l, Inc.*, 447 F.3d 1102 (8th Cir. 2006). In *Parsons*, the Eighth Circuit explained that its "holding in *Thomforde* turned on the fact-intensive inquiry concerning the specific language used in the agreement and the agreement's imprecise use of legal terms of art." *Id.* at 1104. However, the court explained further that

> [t]he statutory requirements are minimum standards for creating a
> voluntary and knowing waiver. Without them, a waiver is not
> valid as a matter of law, **regardless of whether the employee
> actually understood the waiver or not**. The party asserting the
> validity of the waiver bears the burden of establishing that the
> agreement itself was written in a manner calculated to be
> understood. *See* 29 U.S.C. § 626(f)(3). The employee's subjective
> state of mind is irrelevant to this initial inquiry. . . . Thus, the
> writing itself must satisfy § 626(f)(1)(A).
>
> **Issues of whether an employee expressed his
> misunderstanding or otherwise questioned a waiver go to an**

(continued...)

Defendant's motion to dismiss Plaintiff's ADEA claim to the extent that Defendant argues that Plaintiff waived this claim by signing the Release.

C.  **The sufficiency of Plaintiff's ADEA claim**[7]

As the Second Circuit recently noted, "[t]he Supreme Court has held, . . ., that 'the requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.'" *Williams v. N.Y. City Hous. Auth.*, No. 04-2531-CV, 2006 WL 2086021, *4 (2d Cir. July 19, 2006) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)) (other citation omitted). "In *Swierkiewicz*, the Court held that at the pleading stage in an employment discrimination action a plaintiff must only meet the standard set forth in Fed. R. Civ. P. 8(a), which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting *Swierkiewicz*, 534 U.S. 512, 122 S. Ct. 992). Moreover, "[u]nder

---

[6](...continued)
   **employee's subjective state of mind** . . . . Thomforde's actions of questioning his employer about the waiver and explicitly putting IBM on notice that he planned to pursue an ADEA claim before he signed the agreement supported our conclusion that the waiver in that case was not sufficiently clear to meet the statutory requirement contained in § 626(f)(1)(A). . . . **His actions were by no means necessary to our holding, however. We make clear that the waiver itself must be "written in a manner calculated to be understood by such individual" to satisfy the minimum statutory requirements. § 626(f)(1)(A).**

*Id.* at 1105-06 (internal citations omitted) (emphasis added).

[7] Although the only ground upon which Defendant specifically relies to support its motion to dismiss is Plaintiff's waiver of his claims, in the interest of completeness, the Court will address whether Plaintiff's ADEA claim is sufficient to withstand a motion to dismiss.

this standard, '[g]iven the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."'" *Id.* (quoting [*Swierkiewicz*, 534 U.S.] at 514, 122 S. Ct. 992).

In this case, Plaintiff alleges in his complaint that he was older than forty when the alleged discriminatory acts occurred, *see* Complaint at ¶ 14; that his job performance was always satisfactory, *see id.* at ¶ 20; that, when Defendant had a reduction-in-force within its Global Services Group, he was told that he would be terminated unless he could find a position elsewhere in the company, *see id.* at ¶¶ 21-22; that, within thirty-days notice of his termination, he found three positions within the company for which he was qualified, and he understood that the respective managers were interested in hiring him, *see id.* at ¶ 25; and that Defendant did not permit him to take any of these positions for reasons that were unrelated to his ability to perform his work, *see id.* Moreover, Plaintiff states that, at the time he was terminated, his supervisor was aware that he would retire in one year, that Defendant selected him for termination to avoid his increased pension benefits from vesting, *see id.* at ¶¶ 23-24, that he was the only person terminated in his group who was not eligible for retirement at the time of termination, and that the only reason he did not qualify for his pension was his age, *see id.* at ¶ 28. Based upon these assertions, Plaintiff maintains that the circumstances surrounding his termination give rise to an inference that Defendant used his age as a determining factor in selecting him for termination. *See id.* at ¶ 30.

These allegations clearly satisfy Rule 8(a)'s pleading standard. Moreover, the Court cannot conclude as a matter of law that Plaintiff could not prove any set of facts that would

entitle him to relief consistent with these allegations. Therefore, the Court denies Defendant's motion to dismiss Plaintiff's ADEA claim.

### D. Plaintiff's ERISA and New York Human Rights Law claims

Defendant asserts that, because Plaintiff does not dispute that he effectively and validly waived his ERISA and New York Human Rights Law claims, the Court should dismiss these claims.[8]

It is well-established that an employer's failure to comply with the requirements of the OWBPA does not invalidate an employee's release of his Title VII and New York Human Rights Law claims. *See Cordoba v. Beau Deitl & Assocs.*, No. 02 Civ. 4951, 2003 WL 22902266, *7 n.6 (S.D.N.Y. Dec. 8, 2003) (citation omitted); *Branker v. Pfizer*, 981 F. Supp. 862, 867 (S.D.N.Y. 1997) (holding that New York Human Rights Law and ERISA claims are not subject to the OWBPA's increased scrutiny regarding release language). Moreover, it is clear that ERISA and New York Human Rights Law claims are waivable. *See Finz v. Schlesinger*, 957 F.2d 78, 80-82 (2d Cir. 1992) (affirming district court's decision that the plaintiff had relinquished all potential ERISA claims); *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1367 (2d Cir. 1991) (holding that ERISA claims are validly waived as long as the waiver is knowing and voluntary under the totality of the circumstances); *Livingston*, 112 F. Supp. 2d at 249-50 (dismissing New York Human Rights Law claims as

---

[8] Although Plaintiff states in his memorandum of law in opposition to Defendant's motion that he "retains the right to bring an ADEA and an ERISA cause of action," *see* Plaintiff's Memorandum of Law at 1, he does not mention his ERISA claim anywhere else in his memorandum of law nor does he make any reference to his New York Human Rights Law claim.

waived in release); *Reid v. IBM Corp.*, 1997 WL 357969, at *1, *17.

Based upon the language of the Release, as well as the circumstances surrounding its execution and lack of any evidence that Plaintiff did not understand that he was waiving his ERISA and New York Human Rights Law claims, the Court finds that Plaintiff knowingly relinquished all of these claims when he agreed to "never institute a claim of any kind against IBM." *See* Release at 2. Accordingly, the Court grants Defendant's motion to dismiss these claims.

### III. CONCLUSION

After reviewing Plaintiff's complaint, including the Release, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that, as a matter of law, the Release that Plaintiff signed does not bar his ADEA claims against Defendant; and the Court further

**ORDERS** that Defendant's motion to dismiss Plaintiff's ADEA claims is **DENIED**; and the Court further

**ORDERS** that Defendant's motion to dismiss Plaintiff's New York Human Rights Law claims and his ERISA claims is **GRANTED**.

**IT IS SO ORDERED.**

Dated: September 5, 2006
      Syracuse, New York

*[signature]*
Frederick J. Scullin, Jr.
Senior United States District Court Judge